**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**TACOMA DIVISION**

| | |
|---|---|
| GARY FREY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HERITAGE BANK and HERITAGE FINANCIAL CORPORATION,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Gary Frey, individually and on behalf of all others similarly situated, ("Plaintiff") brings this Action against Heritage Bank and Heritage Financial Corporation (together, "HERITAGE" or "Defendants"). Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth, after a reasonable opportunity for discovery.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

## INTRODUCTION

1. The release, disclosure, and publication of sensitive, private data can be devastating. It is not only an intrusion of privacy and a loss of control, but also a harbinger of identity theft. For victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach. With the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, collect government benefits, or secure driver's licenses in the victims' names. Data breaches force victims to maintain constant vigilance over the misuse of their information.

2. Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personally identifying information, including but not limited to names and Social Security numbers (SSN) (collectively, "PII" or "Personal Information"), disclosed to unauthorized third parties during a data breach experienced by Heritage in or around March 1, 2025.

3. Heritage Bank maintains 50 branch locations across the Pacific Northwest, 43 of which are located in Washington State.[2]

4. On March 2, 2026, Heritage discovered unauthorized activity on its network.[3] After further investigation, Defendants discovered unauthorized access to its network began on March 1, 2026. Heritage Bank published an article on its website stating that during this unauthorized access, "certain files were copied from an internal file share server on March 1, 2026. The file share server is used by employees and may contain some employee and customer private and confidential data."[4] The article continues to state that "[t]he information present within the reviewed data varies by

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, S.C. LAWYER (May 2014).

[2] Heritage Bank, *United States 50 Locations, https://local.heritagebanknw.com/index.html* (last visited Mar. 23, 2026).

[3] Heritage Bank, *Notice of Security Incident,* [https://www.heritagebanknw.com/home/resource-center/security](https://www.heritagebanknw.com/home/resource-center/security) (last updated Mar. 20, 2026).

[4] *Id.*



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

individual and may include your name and one or more of the following: account number, SSN or ITIN, date of birth, and/or address."[5]

5. Little information has been made available by Heritage about the Data Breach. The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again have not been shared with Plaintiff and Class Members, who retain a vested interest in ensuring that their Personal Information remains protected.

6. Defendants were aware of or should have known of its data security shortcomings. They collect and maintain sensitive Personal Information about their customers, including SSNs and financial information. They require customers to provide this highly confidential information in connection with using Heritage's products and services

7. Despite knowing how valuable customer information is and the damage that would result from its release, Defendants failed to adequately protect Plaintiff's and Class Members' PII. This PII was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data.

8. Hackers targeted and obtained Plaintiff's and Class Members' PII because it empowers criminals to exploit and steal the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiff and Class Members, will remain for their respective lifetimes.

9. Defendants' failures to ensure that its servers and systems were adequately secure fell far short of its obligations and Plaintiff's and Class Members' reasonable expectations for data privacy, jeopardized the security of Plaintiff's and Class Members' Personal Information, and exposed Plaintiff and Class Members to fraud and identity theft or the serious risk of fraud and identity theft.

10. As a result of Defendants' conduct and the resulting Data Breach, Plaintiff and Class

---

[5] *Id.*



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft or face the substantial and continuing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

11. Plaintiff brings this class action lawsuit on behalf of himself and those similarly situated to address Defendants' inadequate safeguarding of Class Members' Personal Information that they collected and maintained.

**PARTIES**

12. Plaintiff Gary Frey is an adult citizen of the State of Washington, and resides in Oak Harbor, Washington. Plaintiff manages his finances with Heritage Bank, and was notified by Facebook in mid-March of 2026 that Heritage had a Data Breach affecting customers. He then learned that his Personal Information was accessed and/or acquired by unauthorized third parties in the Data Breach.

13. As a result of the Data Breach, Plaintiff has had to monitor his accounts and anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

14. Moreover, Plaintiff recently found fraudulent criminal activity on both his Prosper credit card and his Zell card. This forced him to change his credit card numbers, close his account, and receive a new account to protect his finances. Throughout this process, he had to spend 9-10 days without access to funds through these cards. Plaintiff also needed to wait another two to three weeks to be refunded from the disputed fraudulent charges, thus creating an even greater period of being separated from his finances because of fraudulent activity related to the breach. Plaintiff has spent considerable time rectifying the fraudulent activity on his cards and preventing future fraudulent activity. He also plans to freeze his credit as a result of the Heritage Data Breach and anticipates continued time spent as he further monitors his finances.

15. As shown by the actual fraud that has occurred and as well document by privacy and cyber experts, as a result of the Data Breach, Plaintiff is at a present risk and will continue to be at



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

increased risk of identity theft and fraud for years to come. Plaintiff has a continuing interest in ensuring that his Personal Information, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

16. Heritage Bank is a Washington corporation, with its principal place of business located at 3615 Pacific Ave, Tacoma, WA 98418-7921.[6]

17. Heritage Financial is the holding company of Heritage Bank, its primary subsidiary.[7] Heritage Financial has its headquarters at the same address as Heritage Bank.[8]

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class Members, the action is a class action in which one or more Class Members are citizens of states different from Defendant, and Defendants is not a government entity. Heritage Bank has branches in Washington, Oregon and Idaho, meaning substantial numbers of class members will be found in states other than Washington.

19. The Court has personal jurisdiction over Defendants because Defendants hold their principal offices in Tacoma, Washington, operate in Washington, conduct other significant business in Washington, and otherwise have sufficient minimum contacts with and intentionally avail themselves of the markets in Washington.

20. Venue properly lies in this judicial district because, inter alia, Defendants have a principal place of business in this district; Defendants transact substantial business, have agents, and are otherwise located in this district; and a substantial part of the conduct giving rise to

---

[6] Corporations and Charities Filing System, *Heritage Bank*, https://ccfs.sos.wa.gov/#/BusinessSearch/BusinessInformation (last visited Mar. 23, 2026).

[7] Heritage Financial, *Investor Relations*, https://www.hf-wa.com/ (last visited Mar. 23, 2026).

[8] Corporations and Charities Filing System, *Heritage Financial Corporation*, https://ccfs.sos.wa.gov/#/BusinessSearch/BusinessInformation (last visited Mar. 23, 2026).



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A. Heritage Collects and Stores Personal Information

21. Heritage is a community bank that serves thousands across the Pacific Northwest in Washington, Oregon and Idaho. They routinely collect highly sensitive Personal Information and financial in the process of providing banking and other financial services.

22. Defendants are and were aware of the sensitive nature of the Personal Information they collect, and they acknowledge the importance of data privacy. In their own Privacy Policy, Defendants promise that "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[9] It goes on to claim that even within Heritage Bank itself, "[w]e limit employee access to personal information to those who need it to provide products or services to you." Moreover, the Data Breach included customer birthdates and addresses, which are not permitted to be shared legitimately under the Privacy Policy — let alone provided to cybercriminals as occurred in the Data Breach.[10] Heritage broke the promises in their Privacy Policy when it failed to protect the data they were entrusted by their clients and employees to safeguard as required by law.

### B. The Data Breach

23. On or about March 2, 2026, Heritage Bank detected unauthorized activity on its systems.

24. According to its own website, Heritage activated its cybersecurity response protocols, engaged cybersecurity experts to investigate, contain, and remediate the incident, and implemented

---

[9] Heritage Bank, *Privacy Policy*, https://www.heritagebanknw.com/home/fiFiles/static/documents/privacy-notice.pdf (last visited Mar. 23, 2026).

[10] *Id.*



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

enhanced security measures. Heritage Financial also notified law enforcement authorities.[11]

25. Defendants' investigation has revealed evidence that an unauthorized party obtained confidential, proprietary, and personal information, including SSNs, account numbers, birthdates, and/or addresses.[12]

26. The Personal Information stolen in the breach necessarily places affected individuals at heightened risk of identity theft, phishing attacks, and financial fraud.

27. To date, Heritage has failed to take adequate steps to protect individuals affected by the Data Breach, instead putting the burden on Plaintiff and Class Members to take action to mitigate their damages. For example, on the "Notice of Security Incident" page, Heritage tasks consumers with monitoring accounts for unauthorize activity and making time-consuming phone calls in the event of a concern, stating, "[w]e encourage individuals to be vigilant over the next 12 to 24 months by regularly reviewing and monitoring all account statements, explanation of benefits statements, and credit history to guard against any unauthorized transactions or activity. If an individual discovers any suspicious or unusual activity on their accounts, they should promptly contact their financial institution or company."[13]

### C. Impact of the Data Breach

28. As a result of the Data Breach, Plaintiff and Class Members had their most sensitive Personal Information accessed and acquired by cybercriminals, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, the value of their time reasonably incurred to remedy or mitigate the effects of the attack, and unauthorized use of their Personal Information.

---

[11] United States Securities and Exchange Commission *Heritage Financial Corporation Form 8-K,* https://www.sec.gov/Archives/edgar/data/1046025/000162828026020261/hfwa-20260320.htm (last visited Mar. 23, 2026).

[12] Heritage Bank, *Notice of Security Incident,* https://www.heritagebanknw.com/home/resource-center/security (last updated Mar. 20, 2026).

[13] *Id.*



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

29. The actual extent, scope, and impact of the Data Breach remains uncertain. Unfortunately for Plaintiff and Class Members, the damage is already done because their sensitive Personal Information has been disclosed to unauthorized persons during the Data Breach.

30. Defendants knew or should have known that their affected systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, Heritage failed to timely make changes to its data security systems, privacy policies, and their IT systems and servers, exposing their customers' Personal Information to the risk of theft, identity theft, and fraud.

31. The Data Breach creates a heightened security concern for Plaintiff and Class Members because their SSNs, and likely their financial information and other sensitive information, was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. To obtain a new number, a breach victim must demonstrate ongoing harm from misuse of his or his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

32. Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, SSNs "can be an identity thief's most valuable piece of consumer information."[14] TIME quotes data security researcher Jim Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[15]

33. Heritage had a duty to keep Plaintiff's and Class Members' Personal Information

---

[14] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

[15] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifaxdata-breach-social-security/.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

confidential and to protect them from unauthorized disclosures. Plaintiff and Class Members provided their Personal Information to Heritage with the understanding that Heritage would comply with its privacy policies and protocols, the values they espouse regarding serving the community.[16]

34. Defendants' data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in Defendants' industry.

### D. Theft of Personal Information Has Serious Consequences for Victims

35. Hostile attacks to obtain data are by no means new, and they should not be unexpected by business that collect and monetize consumer data.

36. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[17] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

37. These types of attacks should be anticipated by companies that store sensitive PII, like Heritage, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

38. Theft of Personal Information is serious. The Federal Trade Commission (FTC) has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's

---

[16] Heritage Bank, *We help Our Customers Build Their Dreams in Their Own Communities*, https://www.heritagebanknw.com/home/about/company-story (last visited Mar. 23, 2026).

[17] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

name.[18]

39. Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[19]

40. According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[20]

41. Personal Information is a valuable property right.[21] The value of sensitive Personal

---

[18] See Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Oct. 22, 2025).

[19] See Federal Trade Commission, *Warning Signs of Identity Theft*, FED. TRADE COMM'N CONSUMER ADVICE, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited Aug. 22, 2025).

[20] See Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-canidentity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[21] *See* Marc van Lieshout, *The Value of Personal Data,* 457 INTERNATIONAL FEDERATION FOR INFORMATION PROCESSING 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

Information as a commodity is measurable.[22] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[23]

42. Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information reportedly exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

43. Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

44. Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are

---

personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[22] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market,* MEDSCAPE.COM (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[23] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD DIGITAL ECONOMY PAPERS, NO. 220 at 4 (Apr. 2, 2013), https://www.oecdilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

willing to pay a premium to purchase from privacy protective websites."[24]

45. There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[25]

46. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

47. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[26]

48. It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### E. <u>Heritage Failed to Act in the Face of a Known Risk of a Data Breach</u>

49. Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendants failed to take reasonable steps to adequately protect Personal Information, leaving its clients (and potentially others) exposed to risk of fraud and identity theft.

---

[24] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[25] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[26] Identity Theft Resource Center, 2021 Consumer Aftermath Report, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

50. Defendants are, and at all relevant times has been, aware that the sensitive Personal Information they handle and store in connection with providing banking services and products is highly sensitive. As a company that requires consumers to provide highly sensitive and identifying information, Heritage is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

51. Heritage was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

52. Despite the well-known risks of hackers and cybersecurity intrusions, Defendants failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

53. The security flaws inherent to Defendants' IT systems or servers run afoul of industry best practices and standards. Had Defendants adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, they could have prevented the Data Breach.

54. Despite the fact that Defendants were on notice of the very real possibility of data theft, they still failed to make necessary changes, and permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and thousands of other Class Members' Personal Information to criminals.

55. Defendants permitted Class Members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

56. Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

industry data security standards.[27]

57. As a result of the events detailed herein, Plaintiff and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including, but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

58. Victims of the Data Breach have likely already experienced harms and are subject to a substantial and ongoing risk of harm, including identity theft and fraud.

59. As a result of Heritage's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

60. Plaintiff brings this action individually and on behalf of the following Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All residents of the United States who were impacted by the Data Breach, including all persons who were sent notice by Defendants that their Personal Information was compromised as a result of the Data Breach.
>
> **Washington Subclass**

[27] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

> All residents of Washington who were impacted by the Data Breach, including all persons who were sent notice by Defendants that their Personal Information was compromised as a result of the Data Breach.

61. The above-defined classes are referred to hereafter as the "Class" or "Classes." Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and court staff; and (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants, or their parents, have a controlling interest, and their current or former officers and directors.

62. **<u>Numerosity</u>**: While the precise number of Class Members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class is reported to include over 130,000 members who are geographically dispersed.

63. **<u>Typicality</u>**: Plaintiff's claims are typical of Class Members' claims. Plaintiff and all Class Members were injured through Defendants' uniform misconduct, and Plaintiff's claims are identical to the claims of the Class Members they seek to represent. Accordingly, Plaintiff's claims are typical of Class Members' claims.

64. **<u>Adequacy</u>**: Plaintiff's interests are aligned with the Class Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class's interests are well represented by Plaintiff and undersigned counsel.

65. **<u>Superiority</u>**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class Member's claims. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class Members individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

66. **Commonality and Predominance**: The following questions common to all Class Members predominate over any potential questions affecting individual Class Members:

- whether Defendants engaged in the wrongful conduct alleged herein;
- whether Defendants' data security practices resulted in the disclosure of Plaintiff's and other Class Members' Personal Information and the Data Breach;
- whether Defendants violated privacy rights and invaded Plaintiff's and Class Members' privacy; and
- whether Plaintiff and Class Members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

67. Given that Defendants engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

68. **Injunctive and Declaratory Relief**: Consistent with Fed. R. Civ. P. 23(b)(2), Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Nationwide Class or, Alternatively, the Washington Subclass)

69. Plaintiff realleges and incorporates paragraphs 1 through 68 as though fully set forth herein

70. Defendants were entrusted with, stored, and otherwise had access to the Personal



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

Information of Plaintiff and Class Members.

71. Defendants knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class Members, and to not ensuring that their servers and systems, and the Personal Information, were secure. These risks were reasonably foreseeable to Defendants, including because Defendants have previously experienced a data breach.

72. Defendants owed duties of care to Plaintiff and Class Members whose Personal Information had been entrusted to it.

73. Defendants breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate data security. Defendants had a duty to safeguard Plaintiff's and Class Members' Personal Information and to ensure that they adequately protected Personal Information. Defendants breached this duty.

74. Defendants' duty of care arises from their knowledge that their customers entrust them with the highly sensitive Personal Information that Heritage is required to handle securely.

75. Only Heritage was positioned to ensure that their systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiff and Class Members have now suffered.

76. A "special relationship" exists between Defendants, on the one hand, and Plaintiff and Class Members, on the other hand. Defendants entered a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to the sensitive Personal Information provided by Plaintiff and Class Members in connection with obtaining or utilizing Heritage's services.

77. But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

78. Defendants acted with wanton disregard for the security of Plaintiff's and Class Members' Personal Information.

79. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of duties. Defendants knew or should have known they



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

were failing to meet these duties, and that Defendants' breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

80. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have been harmed and face a substantial and continuing risk of harm.

81. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Nationwide Class or, Alternatively, the Washington Subclass)**

82. Plaintiff realleges and incorporates paragraphs 1 through 68 as though fully set forth herein.

83. Heritage provided or provides services, and Plaintiff and Class Members provided their Personal Information to Heritage as customers utilizing those services, or in otherwise transacting with Defendant.

84. In connection with their business relationship, Plaintiff and Class Members entered into implied contracts with Heritage.

85. Pursuant to these implied contracts, Plaintiff and Class Members provided Heritage with their Personal Information. In exchange, Heritage agreed, among other things, to: (1) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' Personal Information; and (2) protect Plaintiff's and Class Members' Personal Information in compliance with federal and state laws and regulations and industry standards.

86. The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Heritage, on the other hand. Had Plaintiff and Class Members known that Heritage would not adequately protect its customers' Personal Information, they would not have done business with Heritage and utilized its services.



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

87. Plaintiff and Class Members performed their obligations under the implied contract when they provided Heritage with their Personal Information.

88. Necessarily implicit in the agreements between Plaintiff/Class Members and Defendants was Heritage's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class Members' Personal Information.

89. Defendants breached their obligations under their implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable security measures to protect their Personal Information.

90. Defendants' breach of its obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breach.

91. The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendants' material breaches of its agreements.

92. Plaintiff and other Class Members were damaged by Defendants' breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class or, Alternatively, the Washington Subclass)**

93. Plaintiff realleges and incorporates paragraphs 1 through 68 as though fully set forth herein.



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

94. This claim is pleaded in the alternative to the implied contract claim.

95. Defendants have profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiff and Class Members to receive services and benefits from Heritage.

96. Heritage has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class Members did not receive services of the quality, nature, fitness, or value represented by Heritage and that reasonable consumers expected.

97. Heritage has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class Members.

98. Equity and justice militate against permitting Heritage to retain these profits and benefits.

99. Plaintiff and Class Members suffered injury as a direct and proximate result of Heritage's unjust enrichment and seek an order directing Heritage to disgorge these benefits and pay restitution to Plaintiff and Class Members.

**COUNT IV**
**DECLATORY JUDGMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

100. Plaintiff incorporates paragraphs 1 through 68 as if fully set forth herein.

101. Plaintiff and the Class have stated claims against Defendants based on negligence, breach of implied contracts and unjust enrichment.

102. Defendants failed to fulfill their obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

103. As a result of the Data Breach, Defendants' systems are more vulnerable to unauthorized access and require more stringent measures to be taken to safeguard the PII of Plaintiff and the Class going forward.

104. Plaintiff seeks a declaration that Defendants must implement specific additional,



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendants' existing security measures do not comply with their obligations, and that Defendants must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with their data security obligations.

**<u>COUNT V</u>**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT,**
**WASH. REV. CODE § 19.86.020, *ET SEQ.***
**(On Behalf of Plaintiff and the Washington Subclass)**

105. Plaintiff incorporates paragraphs 1 through 68, as if fully set forth herein.

106. The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, et seq. ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Wash. Rev. Code § 19.86.020.

107. As alleged herein, Defendants' policies and practices relating to its substandard security measures for the use and retention of its patients' personal and medical information violate the CPA because they are both unfair and deceptive. Further, Defendants engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of the CPA, including, but not limited to, the following:

a. Defendants misrepresented and fraudulently advertised material facts pertaining to the banking services to the Class by representing and advertising that they would maintain adequate data privacy and security practices and procedures to safeguard Class Members' PII from unauthorized disclosure, release, data breaches, and theft;

b. Defendants misrepresented material facts pertaining to banking services to the Class by representing and advertising that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Class



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

Members' PII;

c. Defendants omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Plaintiff and Class Members' PII;

d. Defendants engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Plaintiff and Class Members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including Federal Trade Commission Act (15 U.S.C. § 45);

e. Defendants engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to Plaintiff and the Class in a timely and accurate manner, contrary to the duties imposed by Wash. Rev. Code § 19.255.010(1);

f. Defendants engaged in deceptive, unfair, and unlawful trade acts or practices by failing to have appropriate security safeguards or controls in place to prevent exploitation of vulnerabilities within its system that implicated the security of the PII of Plaintiff and the Class;

g. Defendants engaged in deceptive, unfair, and unlawful trade acts or practices by failing to encrypt the sensitive PII of Plaintiff and the Class, including their Social Security Numbers;

h. Defendants engaged in deceptive, unfair, and unlawful trade acts or practices by failing to timely monitor and test its security measures in a manner sufficient to detect the unauthorized access and/or acquisition of the PII of Plaintiff and the Class; and

i. Defendants engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff and the Class's PII from further unauthorized disclosure, release, data breaches, and theft.

108. Defendants had statutory, regulatory, and common law obligations to prevent the foreseeable risk of harm to others, including the Plaintiff and the Class.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

109. It was foreseeable that the failure to use reasonable measures to protect the sensitive PII of Plaintiff and the Class and to provide timely notice that a breach was detected if reasonable security measures were not taken, would put consumers, such as Plaintiff and the Class at a serious risk of injury from the theft and fraudulent use of patients PII.

110. As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Class suffered injury and/or damages.

111. The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

112. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard the PII of Plaintiff and the Class and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the Class.

113. Plaintiff and the Class seek relief under Wash. Rev. Code § 19.86.090, including, but not limited to, actual damages, treble damages, injunctive relief, and attorneys' fees and costs.

## COUNT VI
## VIOLATION OF THE WASHINGTON DATA BREACH STATUTE
## WASH. REV. CODE § 19.255.010(1), *ET. SEQ.*
## (On Behalf of Plaintiff and the Washington Subclass)

114. Plaintiff incorporates paragraphs 1 through 68 as if fully set forth herein.

115. Under § 19.255.010, Defendants are required to accurately notify Plaintiff and the Class following discovery or notification of the breach of their data security system (if personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured) in the most expedient time possible and without unreasonable delay under Wash. Rev. Code Ann. § 19.255.010(1).



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

116. The Washington legislature, in passing § 19.255.010, recognized that data breaches of personal information, such as the Data Breach at issue here, can compromise financial security and be costly to consumers. The legislature intended to

> strengthen the data breach notification requirements to better safeguard personal information, prevent identity theft, and [. . .] provide consumers whose personal information has been jeopardized due to a data breach with the information needed to secure financial accounts and make the necessary reports in a timely manner to minimize harm from identity theft.

Wash. Rev. Code Ann. § 19.255.010 [2015 c 64].

117. Defendants conduct business in Washington and own or license computerized data that includes personal information as defined by Wash. Rev. Code Ann. § 19.255.010(1).

118. The PII of Plaintiff and the Class (e.g., Social Security numbers) includes personal information as covered under Wash. Rev. Code Ann. § 19.255.010(5).

119. Because Defendants discovered a breach of its security system (in which personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured), Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wash. Rev. Code Ann. § 19.255.010(1) and § 19.255.010(8).

120. As a direct and proximate result of Defendants' violations of Wash. Rev. Code Ann. § 19.255.010(1), Plaintiff and the Class suffered damages, as described above.

121. Plaintiff and the Class seek relief under Wash. Rev. Code Ann. §§ 19.255.010(10)(a), 19.255.010(10)(b) including, but not limited to, actual damages and injunctive relief.

**PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B. Award Plaintiff and Class Members actual and statutory damages, punitive damages, and



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

monetary damages to the maximum extent allowable;

C. Award declaratory and injunctive relief as permitted by law or equity to assure that Class Members have an effective remedy, including enjoining Defendants from continuing the unlawful practices as set forth above;

D. Award Plaintiff and Class Members pre-judgment and post-judgment interest to the maximum extent allowable;

E. Award Plaintiff and Class Members reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Award Plaintiff and Class Members such other favorable relief as allowable under law or at equity.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury for all claims so triable.

Dated: March 24, 2026

Respectfully submitted,

By: */s/ Thomas E. Loeser*
Thomas E. Loeser (WSBA #38701)
By: */s/ Karin B. Swope*
Karin B. Swope (WSBA #24015)

**COTCHETT, PITRE & McCARTHY LLP**
Thomas E. Loeser (WSBA #38701)
Karin B. Swope (WSBA #24015)

1809 7th Avenue, Suite 1610
Seattle, WA 98101
T: (206) 802-1272
F: (206) 299-4184
tloeser@cpmlegal.com
kswope@cpmlegal.com

*Counsel for Plaintiff Gary Frey*